UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI MUSAID AHMED
MUTHANA,
    Plaintiff,
    v.

PAUL SCHREIBER and
ELIZABETH POPIEL,
    Defendants.
_____/

Case No. 23-12869

Sean F. Cox
Chief United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 15)

## I.    PROCEDURAL HISTORY

Plaintiff Muthana filed this prisoner civil rights case without counsel on November 13, 2023, alleging that he was denied access to the courts and due process. (ECF No. 1). This matter was referred to the undersigned for all pretrial proceedings. (ECF No. 11). Defendants Warden Schreiber and Librarian Popiel moved to dismiss the complaint in part. (ECF No. 15). Plaintiff moved for an extension of time to respond to the motion (ECF No. 17), but filed a 52-page response before the Court could rule on his motion (ECF No. 18).

For the reasons below, the undersigned recommends that Defendants' motion to dismiss be **GRANTED**.

## II.    COMPLAINT ALLEGATIONS

Plaintiff, an inmate housed at Woodland Correctional Facility at the time relevant to the complaint, alleges that both defendants denied him access to the Court and retaliated against him for filing lawsuits against Michigan Department of Corrections ("MDOC") staff.

Plaintiff alleges that prison librarian Defendant Popiel denied Plaintiff legal writing assistance, photocopies, and access to the law library, and took his legal documents and grievances all between January 3, 2023, and October 3, 2023. (ECF No. 1, PageID.7).  Popiel told Plaintiff to use the legal writer at another facility, but doing so would violate prison policy because inmates are not permitted to communicate with prisoners in another facility.  (*Id.*).  Still, a legal writer from outside the prison wrote one complaint for Plaintiff, but then Popiel told that person not to help Plaintiff any further.  Popiel told Plaintiff that his handwriting was good so he could write the complaint himself, even though Plaintiff has no legal knowledge or advanced education and is mentally ill.  (*Id.*).  Popiel told Plaintiff to give her his grievances and documents to scan, but she destroyed his documents in retaliation for filing lawsuits.  (*Id.* at PageID.7-8).

Defendant Popiel allegedly refused Plaintiff access to photocopy documents for a civil rights lawsuit between May and August 2023.  (*Id.* at PageID.8).  Popiel told him it was because of budget issues.  Plaintiff showed her Court instructions

dictating how many copies of his complaint he needed to file, but Popiel refused because he had filed too many lawsuits against MDOC staff. (*Id.* at PageID.9). Plaintiff says that Popiel's actions forced Plaintiff to write and file the complaint by himself. (*Id.* at PageID.11). Plaintiff has filed five lawsuits since being incarcerated; this is the first one he had to file without assistance from a legal writer. (*Id.* at PageID.20).

Plaintiff alleges that Defendant Schreiber allowed Popiel to deny him access to the Court. Schreiber was aware of the problems because Plaintiff submitted grievances that Schreiber responded to at Step II, although those responses were denials. (*Id.* at PageID.6). Plaintiff says that Schreiber is responsible because he has the power to tell Popiel to approve his request for photocopies and legal writer assistance. And Schreiber was responsible for finding a legal writer for the prison. (*Id.*).

## III.    ANALYSIS AND RECOMMENDATIONS

### A.    Governing Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011)

("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

    B.   <u>Discussion</u>

Defendants Schreiber and Popiel argue that Plaintiff failed to state an access-to-the-courts claim against them.  Schreiber also argues that Plaintiff failed to state a retaliation claim or a claim arising out of the denial of grievances against him.[1] Popiel does not challenge the retaliation claim against her.

    1.   Denial of Access to the Courts

Prisoners have a First Amendment right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977).  Prison officials are required to ensure that inmates have access to the courts that is "adequate, effective and meaningful."  *Id.* at 822.  Prisoners must have access to a law library or some alternative sources of legal information, such as legal assistance.  *Id.* at 817.  Meaningful access varies with the circumstances; prison officials are accorded discretion in determining how that right is to be administered.  *Id.* at 830-31.

---

[1] Defendant's brief Section II.A. provides the legal authority to support the requirement that a plaintiff must clearly show that each defendant was personally involved.  (ECF No. 15, PageID.112-15).  After the recitation of law, there is no argument; the brief moves into the argument that Plaintiff failed to state an access-to-the-courts claim.  The undersigned takes the lack of argument to indicate Defendants are not challenging personal involvement.

To state a viable claim for interference with access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). The plaintiff thus must demonstrate that the issues with the legal assistance program or lack of legal materials "hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim." *Jackson v. Bolton*, 2024 WL 1340556, at *11 (W.D. Mich. Mar. 29, 2024) (citing *id.* at 351-53). The Supreme Court has stated that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 n. 3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Defendants argue that Plaintiff's claim is conclusory and that he did not identify any prejudice resulting from his not having access to a legal writer. (ECF No. 15, PageID.116). In response, which he wrote himself, Plaintiff explains that he has no legal education, was not educated in the United States, and is mentally ill. (ECF No. 18, PageID.125). He says that he cannot support his response with legal authority because he was "restricted from going to the law library because they think [he] is mentally ill." (*Id.*). "They" also denied him access to the prison legal writer program or legal assistance. (*Id.*).

Plaintiff's response is insufficient to save his claim not because of the lack of legal authority, but because neither the complaint nor response explains prejudice to any legal proceedings.  Though Plaintiff alleged he could not file a lawsuit between May and August 2023, this fact alone does not mean that the intended lawsuit was prejudiced—we do not know whether he later filed that lawsuit, or whether it was time-barred, for instance.  An inability to file a lawsuit during a three-month period is not necessarily prejudice.  Plaintiff also mentioned having a "6.500 Motion" to file, but Popiel would not allow a legal writer to help him.  (ECF No. 1, PageID.7).  He did not later explain whether he filed that motion or lost the ability to file it.  Because Plaintiff failed to plead an element of his access-to-the-courts claims, the claims should be dismissed.

2.     Remaining claims against Schreiber

The remaining claims against Schreiber allege that he was responsible for Popiel's actions, should have told Popiel to make copies for Plaintiff, and should have told her to stop destroying Plaintiff's documents, and that Schreiber failed to provide access to a legal writer.

Schreiber argues that allegations about a supervisor's failure to supervise, control, or train employees fail to state a claim unless the supervisor either encouraged the misconduct or in some way directly participated in it.  (ECF No. 15, PageID.116).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory" that the supervisor is liable because they were charged with supervising a subordinate who violated the Constitution. *Iqbal*, 556 U.S. at 676.  "[A] mere failure to act will not suffice to establish supervisory liability." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citation omitted).  Some "active unconstitutional behavior" is required on the part of the supervisor.  *Id.* (citation omitted).  "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (emphasis added) (internal quotation marks omitted).  This means that, "'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Peatross*, 818 F.3d at 242 (citation omitted).

Plaintiff alleges that Schreiber was aware of Popiel's alleged retaliation[2] through the grievances Plaintiff filed against Popiel because Schreiber responded to those grievances at Step II.  Despite knowledge of Plaintiff's claims, Schreiber took no action to cure the issues.

---

[2] Since the undersigned concludes that the access-to-the-courts claim should be dismissed, Schreiber's supervisory responsibility related to access to the courts is immaterial and not addressed here.

In *Shehee*, the plaintiff alleged that he was fired from his prison commissary job in retaliation for filing a grievance. 199 F.3d at 298. Shehee filed a grievance about the retaliation. The prison official who responded to the grievance did not intervene on Shehee's behalf or take any action with respect to the retaliation claim. Shehee also complained to his congressman, who inquired about the complaints with the Warden, defendant Luttrell. Luttrell also took no action. *Id.* Luttrell and the grievance responders argued for dismissal on the ground that they were not involved in Shehee's termination and that their only roles were as grievance respondents or the failure to act. *Id.* at 300. The Sixth Circuit held that these defendants had not violated the Constitution because there was "no allegation that any of these defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts against Shehee[.]." *Id.*

As in *Shehee*, Schreiber's awareness of alleged constitutional violations and not taking appropriate action are insufficient to impose liability on him under § 1983. *Id.* Alleging that Schreiber read the grievances against Popiel and that Schreiber had the authority to tell Popiel to act differently does not demonstrate that Schreiber implicitly authorized Popiel's actions. Failure to act does not necessarily imply that the supervisor implicitly authorized continued violations. *See Does v. Whitmer*, 69 F.4th 300, 307 (6th Cir. 2023) ("Even if the plaintiffs plausibly allege that Etue and Gaspar knew of ongoing constitutional violations,

their allegations that the directors acquiesced in or implicitly authorized those violations are wholly conclusory.  The plaintiffs allege that Etue and Gaspar failed to instruct their subordinates on the unconstitutionality of SORA and that, by failing to act, they encouraged and implicitly authorized the continued enforcement of SORA.  But alleging a mere failure to act, without more, is insufficient to state a claim of supervisory liability.").  More than the conclusory allegation of failure to act is needed.  Finally, a claim against Schreiber for denying Plaintiff's grievances, to the extent that such a claim is raised, is also insufficient to attach liability. *Williams v. Birkett*, 2015 WL 4955812, at *2 (E.D. Mich. Aug. 18, 2015) ("neither the denial of administrative grievances nor the failure to act by prison officials will subject supervisors to liability under § 1983.") (citing *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008)).  The claims against Schreiber should be dismissed.

Defendants do not challenge Plaintiff's retaliation claim against Popiel. That claim should go forward.  The Court will separately order Popiel to file an answer to the complaint on the retaliation claim.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 15) be **GRANTED**, and that Plaintiff's access-to-the-courts claim be dismissed against both Defendants and all claims be dismissed against Schreiber.

10

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:  September 17, 2024.                    s/Curtis Ivy, Jr.
                                              Curtis Ivy, Jr.
                                              United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on September 17, 2024.


                                              s/Sara Krause
                                              Case Manager
                                              (810) 341-7850